**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-42** |
| **VALENTIN LUBINSKI** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Throughout June of 2022, the defendant used Snapchat to sexually exploit and extort at least 18 minor victims between the ages of 9 and 16 years old to self-produce images and videos of themselves engaged in sexually explicit conduct.  The defendant carried out his scheme by impersonating a teenage boy and by threatening to "expose" the girls and "leak" their images if they did not send him more images and videos at his demand.  The defendant's goal was to extort his victims into participating in not just sexually explicit conduct, but particularly humiliating and degrading conduct, such as recording urinating on themselves and the floor while completely naked.  The criminal conduct charged in the Indictment and to which the defendant pleaded guilty offers only a glimpse into the defendant's ongoing pattern of online sextortion and child exploitation.  Even in this short time period, the defendant victimized dozens of minors.  Most of the defendant's victims were under the age of 14 and had not yet entered high school.

For the reasons set forth below and, subject to the representations in the Sealed Supplement to this sentencing memorandum, the government recommends a sentence of 23 years' imprisonment to be followed by a period of at least 20 years of supervised release, a $3,600 special assessment, a $25,000 assessment under the Amy, Vicky, and Andy Child Pornography Victims' Assistance Act ("AVAA"), and $3,000 in restitution to Minor 7.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors which, along with the reasons discussed in the Sealed Supplement, support the imposition of a sentence of 23 years' imprisonment (276 months' imprisonment) to be followed by a period of at least 20 years of supervised release.

## I.     PROCEDURAL BACKGROUND

On February 2, 2023, a federal grand jury returned a 36-count indictment against defendant Valentin Lubinski, charging him with 18 counts of use of an interstate commerce facility to entice a minor, and attempt to entice a minor, to engage in sexual conduct (Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, and 35), in violation of 18 U.S.C. § 2422(b), and 18 counts of manufacture, attempted manufacture, and willfully causing the manufacture of child pornography, in violation of 18 U.S.C. §§ 2251(a), (e) and 2(b) (Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, and 36).

On December 4, 2024, the defendant entered a guilty plea to all counts of the Indictment.

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

## II.     <u>FACTUAL BACKGROUND</u>

In June of 2022, the defendant, operating the handle "Leo_32149," used the Internet-based social media application Snapchat to sexually exploit and extort 18 identified minor victims between the ages of 9 and 16 years old to self-produce sexually explicit images and videos of themselves and send them to him.

As evidenced by his Snapchat messages, the defendant engaged in a common communication style with each victim.  In summary, he usually messaged his victims on Snapchat and told them that he had added the victims' Snapchat accounts after finding their usernames on their Tik Tok profiles.  He quickly asked the victims how old they were and then lied about his own age, identifying himself as a male between the ages of 13 and 17 years old, usually a year or two older than the age self-reported by each victim.  The defendant then asked for an image to see what the victim looked like.  Upon receipt, he responded with a compliment. The defendant often sent the victims a photo of a teen boy he purported to be himself.  After the initial exchange, the defendant commonly told the victim that he had a question for her.  The defendant then asked some variation of the question, "R u freaky?" or "R u freaky on Snap?" Regardless of the victim's response, the defendant then asked her to make a deal with him--- the victim would send him a picture of his choice and, in exchange, the defendant promised to send a combination of pictures and videos of himself to the victim (this never happened).  Depending on the victim's level of resistance at this point, the defendant would explain that the photo he wanted "wasn't bad" and would then ask for a photo of the victim in her bra or underwear, followed by a topless photo.  Upon receipt of these images, the defendant took screen shots and asked the victim for more sexually explicit images, i.e., photos of her "pussy" and sexually explicit photos with her face included.  Typically, the victims declined to send these images, at

which point the defendant began his sextortion of the victim, threatening to post her topless photo/bra photo/underwear photo on various social media platforms and often sending the screen shot back to her with a banner of text such as, "follow [the victim's social media handle] she sends nudes."  In response to these threats, all but one victim (Minor 2) sent more sexually explicit images to the defendant.  He continued to ask for more humiliating photos and videos of the girls, frequently interspersing his threats to expose the victims by distributing or posting the images they had already sent him back to them.  The defendant often employed a count-down, giving the victims "one minute" to pose in a certain way and send him a photo or video or he would post their other images.  He regularly sent the victims images of other girls (including many of the identified victims) engaged in sexually explicit conduct and instructed the victims to pose "like this" or "exactly like that."  The defendant's typical requests escalated from topless photos to asking the girls to expose their genitals and anuses, masturbate, and expose their genitals while urinating on the floor.  The defendant continued with these extortionate demands until the victims stopped responding.

The defendant's victims ranged in age from 9 years old to 16 years old, and lived primarily in rural areas throughout the United States.  The victims included at least 10 girls who had not yet entered high school: 9-year-old Minor 4, whose Snapchat handle was a variation of "FamilyAccount;" two 10-year-olds (Minor 5 and Minor 14); 11-year-old Minor 9; three 12-year-old girls (Minor 1, Minor 2, and Minor 8); two 13-year-old girls (Minor 7 and Minor 17); and 14-year-old Minor 3, in addition to 15 and 16-year-old victims.

As part of his scheme, the defendant often distributed sexually explicit images and videos of his minor victims, as well as adult pornography, to new victims in order to provide examples of the poses wanted his new victims to model.  The defendant distributed images and videos

depicting Minor 3, Minor 7, Minor 8, Minor 10, Minor 11, Minor 13, Minor 14, and Minor 15 to other minor victims.

Many of the defendant's victims begged him to stop as he extorted them. For example, when the defendant asked Minor 11, "Can I post this [topless image] everywhere and tag you and send it to all ur followers on tik tok[?]," after she declined to send him images of her "pussy or full ass," as he demanded, Minor 11 begged him not to and revealed that her true age was only 12 years old, even though she had initially told the defendant she was 15 (and even then, still a minor). Without acknowledging that she was only 12 years old, the defendant continued to threaten Minor 11 and ordered her to "do what [he said] for five minutes" to avoid having him disseminate her topless photo. The defendant escalated his demands of the victim, ordering her to record degrading and humiliating videos of herself urinating on the floor. When Minor 11 tried to deflect these requests, the defendant demanded that she send him proof that she was drinking water and attempting to comply with his requests. Ultimately, Minor 11 sent the defendant the videos he requested, and the videos depict her crying. Similarly, 14-year-old Minor 12 sent the defendant an image depicting herself visibly crying while complying with his demand that she "show pussy and face in the next 30 seconds."

With other victims, like Minor 4, Minor 6, Minor 7, and Minor 10, the defendant pretended that he might be interested in dating them or becoming their boyfriend, before escalating to extorting them. For example, Minor 10 and the defendant initially exchanged non-explicit photos and discussed dating. The defendant, purporting to be a 16-year-old boy, told Minor 10 that he would only date "freaky girls," and asked to exchange "freaky" photos. The victim hesitated and made several excuses about why she could not send him photos. The defendant persisted, "Show both boobs with face, just send it then I'll stop asking and we'll date,

send it." The victim eventually sent him a topless photograph of herself, which he screenshot. The defendant then asked, "Can you send full body nude?" When Minor 10 declined, the defendant asked, "Can I see pussy then?" When the victim again told him no, the defendant began his sextortion of her: "Ok I'm posting this everywhere and tagging you and sending it to all your followers on tik tok… Ur going to send me a couple pics of my choice or I'm posting." The defendant repeatedly threatened to post her images throughout the rest of their communication. The defendant also asked for the Minor 10's address and threatened to post her images unless she told him. Even when Minor 10 complied with the defendant's demand for a video depicting herself naked and urinating on the floor, the defendant took a screenshot of the video, sent it back to her as a threat, and demanded another, longer video of the same humiliating conduct.

The defendant's conduct came to light after 12-year-old Minor 1 disclosed to her parents that she had been communicating on Snapchat with someone she believed to be a 15-year-old boy who was now threatening to disseminate photos of her.[2] Minor 1's parents made a police report, and the Price County Sheriff's Office obtained a search warrant for the defendant's Snapchat account. The "leo_32149" Snapchat account was identified as the defendant's through the IP addresses associated with the account, which were subscribed to the defendant's mother at their shared residence. The search warrant return, limited to just two weeks in June of 2022, contained the defendant's sexually explicit communications with more than 100 girls who appeared to be minors. Throughout these communications, the defendant successfully enticed

---

[2] Separately, 12-year-old Minor 2 had also reported the defendant's Leo_32149 account to Snapchat for threatening her and demanding nude photographs from her, which prompted Snapchat to submit a CyberTip regarding the account to the National Center for Missing and Exploited Children (NCMEC).

and extorted dozens of girls to self-produce sexually explicit images and send them to him via Snapchat.  Given the extent of the defendant's conduct, the investigation was referred to FBI Philadelphia.

Through leads generated out of FBI Philadelphia, numerous minor victims were identified.  The 18 minor victims included in the Indictment were forensically interviewed and adopted their Snapchat communications with the defendant.  With the exception of Minor 1, Minor 2, and Minor 5, for whom the FBI did not recover any images depicting the children engaged in sexually explicit conduct, all of the other victims identified themselves in sanitized still images of child pornography recovered from the defendant's Snapchat account.  Prior to the victims' interviews, their parents or guardians were interviewed by FBI agents, and they also identified their daughters in sanitized still images recovered from the defendant's Snapchat account.

III.    **SENTENCING CALCULATION**

A.    **Statutory Maximum Sentences**

**Use of an interstate commerce facility to entice and attempt to entice a minor to engage in sexual conduct, 18 U.S.C. § 2422(b), (Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, and 35):** For each count, life imprisonment with a 10-year mandatory minimum term, a mandatory minimum 5 years of supervised release up to a lifetime of supervised release, a $250,000 fine, restitution, a $100 special assessment, and mandatory restitution pursuant to 18 U.S.C. § 2259.

**Manufacture and attempted manufacture of child pornography, 18 U.S.C. § 2251(a), (Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, and 36):** For each count, 30 years' imprisonment with a 15-year mandatory minimum term, a mandatory minimum 5 years of supervised release up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution, and if found to be non-indigent, up to $50,000 in additional assessments under 18 U.S.C. § 2259A.

**TOTAL MAXIMUM PENALTY**: Life imprisonment with a mandatory minimum term of 15 years' imprisonment, a mandatory minimum 5 years of

supervised release up to a lifetime of supervised release, a $9,000,000 fine, a $3,600 special assessment, mandatory restitution pursuant to 18 U.S.C. § 2259, and if found to be non-indigent, up to $900,000 in additional assessments may be imposed under 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Act, or AVAA). Full restitution shall be ordered.

### B.    Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the defendant's advisory Sentencing Guideline range of life imprisonment, based on the defendant's Criminal History Category of V and a final offense level of 43.  PSR ¶¶ 88-239, 311.

### IV.    SENTENCING ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) and the representations set forth in the Sealed Supplement suggests that a sentence of 23 years' imprisonment to be followed by at least 20 years of supervised release is appropriate.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original).  "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084.  "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

The Guidelines, however, are but one of seven factors considered under 18 U.S.C. § 3553(a).  The Court must consider all the sentencing factors and may not treat the Guidelines as either mandatory or presumptively reasonable.  *Gall v. United States*, 552 U.S. 38, 51 (2009).

 The other sentencing factors for the Court to consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) any policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).  Ultimately, the sentencing Court has an "overarching duty to impose a sentence that is sufficient but not greater than necessary to accomplish the goals of sentencing."  *United States v. Pepper*, 131 S. Ct. 1229, 1243 (2011).

## A. <u>Consideration of the 3553(a) Factors</u>

### 1. <u>The nature and circumstances of the offense</u>

The production of child pornography is undisputedly a grave offense.  As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens.  Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet."  *United States v. Williams*, 553 U.S. 285, 307 (2008).  The Supreme Court has clearly recognized the harm to these child victims, noting that the "materials produced are a permanent record of the children's participation…" in the abuse.  *See New York v. Ferber*, 458 U.S. 747, 759 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come.").

- 9 -

Here, the defendant used the Internet to prey on, sexually exploit and extort dozens of minor girls. The defendant manipulated the victims into communicating with him in the first place by pretending to be a teenage boy himself. And, when the victims hesitated to respond or resisted his requests for sexually explicit images of them, he threatened and extorted them. The defendant, an adult exerting power and control over children, often succeeded in convincing the girls to engage in degrading and humiliating conduct to satisfy his own sexual desires while the victims begged him to stop terrorizing them.

Many of the victims were particularly vulnerable. In addition to their young age, some of the victims were growing up without one or both of their parents in their lives. For example, Minor 3 was being raised by her grandparents; Minor 8 was being raised by her single grandmother; Minor 10 was being raised by her stepfather after her mother's death; Minor 11 was being raised by her great-aunt and uncle; Minor 15 was being raised by her single mother after her father was identified as a perpetrator of sexual abuse against her. In addition to Minor 15, Minor 7 and Minor 18 were also victims of hands-on sexual abuse by others. Minor 7 even disclosed this to the defendant during their communications, telling him repeatedly that she hated her body and was uncomfortable taking nude photos because she had previously been raped. Minor 15's mother described her daughter to investigators as developmentally delayed, functioning more like a 10-year-old than her true age of 15. Minor 16 suffered from a severe speech impediment. Minor 6 had survived a serious childhood illness and was identified in her images, in part, through surgical scars on her back and abdomen, where she had previously had a feeding tube inserted. Other victims told the defendant about their body image issues. In June of 2022, all of the victims had been made more vulnerable by the Covid-19 pandemic and the months of isolation and virtual, online school that came with it throughout 2020 and 2021.

The government communicated with all of the victims' parents/guardians prior to the Indictment in February 2023, and has regularly updated them throughout the duration of the criminal case. In the government's discussions with the victims' families, all of them are supportive of the government's sentencing recommendation and relieved that their daughters will not have to travel to Philadelphia and testify at a trial in this matter.

Minor 2, Minor 7, and Minor 11 chose to submit written victim impact statements to the Court in advance of sentencing.[3] In their letters, the victims discuss the shame, or "self-hate" to use Minor 2 and Minor 7's words, they feel as a result of their communications with the defendant, despite the fact that he was the adult who manipulated and sextorted them. The defendant's actions caused his victims to suffer from depression and fear. Many of the victims were just entering puberty and starting to consider their own sexuality at the time the defendant victimized them. The defendant's actions have negatively affected the victims' perceptions of their own sexuality and will likely affect their ability to maintain healthy sexual relationships in the future. As Minor 11, who was 12 years old at the time of the offenses, writes, even her daily life is affected as she sleeps in the same bedroom where she was victimized:

> The things he made do were unimaginable. This had a strain on my mental health after he said he would find where I lived and he would find my family… I have severe trauma. I can't be with random people. I feel uncomfortable around older men. When this happened I felt disgusting and even now I don't like to be hugged or touched… every time I look in my room I get flashbacks to that night that this happened… No 12 year old should have to live with the fact that an older man has pictures of her body.

---

[3] The victim impact statements are included in Exhibit A to this sentencing memorandum, and the government will move to file this exhibit under seal. Should the government receive any additional victim impact statements, the government will forward them to the Court and defense counsel upon receipt.

Exhibit A, p. 2.  Similarly, Minor 7 describes how she started self-harming and began to hate herself after being a victim of the defendant.  Exhibit A, p. 4.  She also describes how it felt to relive the experience of being victimized when the FBI came to her house months later after having identified her as a victim in this case.  *Id.*  She describes how difficult it was to undergo the forensic interview and see images of herself recovered during the investigation.  *Id.*  She writes, "I almost threw up once I found [out] his age after he lied to me about being 15.  I was even more disgusted and disturbed."  The defendant's actions clearly had a significant and lasting impact on the victims of his crimes, and his sentence should reflect that impact.

The government's sentencing recommendation also considers several factors that distinguish this case from a case where a guideline sentence of life imprisonment would be appropriate.  While the defendant's victimization of these girls is egregious, there are some facts present in the case itself that warrant a sentence below the guideline range of life imprisonment.  The guideline range does not distinguish this defendant from those who commit the most horrific hands-on abuse of prepubescent children, trade in images of that abuse, and maintain vast collections of child sexual abuse material ("CSAM"), or child pornography.  There is no evidence that the defendant has engaged in hands-on sexual offenses or contemplated traveling to meet a minor for sex.  There is no evidence in this case that the defendant distributed the girls' images to other offenders (although, as discussed above, he did distribute the victims' images to each other), and he did not maintain a "collection" of CSAM outside of the images depicting the victims he enticed and extorted online.

The government's sentencing recommendation of 23 years' imprisonment also recognizes that, just as this defendant should be distinguished from the offender deserving of a life sentence, this defendant should also be distinguished from the "mandatory minimum"

offender.  Based on the number of victims, their young ages, the defendant's pattern of child sexual exploitation, the threatening nature of the defendant's sextortion of the victims, and his criminal history (further discussed below), the defendant deserves a significantly higher sentence than what the defense recommends.  A sentence of 23 years' imprisonment is well deserved.

2.  <u>The history and characteristics of the defendant</u>

The defendant is a 25-year-old male who has been incarcerated since his arrest in this case on February 7, 2023.  After being adopted as an infant, the defendant grew up in a wealthy home with stable, loving parents in Malvern, Pennsylvania.  PSR ¶¶ 257-258.  Aside from approximately eight months of waiting tables, the defendant has no significant employment history.  PSR ¶¶ 304-306.  He has a history of substance abuse, including alcohol, marijuana, cocaine, and opiates, funded primarily by asking his parents for money, PSR ¶¶ 286-299, and a history of anxiety, depression, and ADHD.  PSR ¶¶ 270-274.  The defendant attended residential drug and mental health treatment on three occasions in 2016, 2020, and 2022.  PSR ¶¶ 294-296.

The defendant has been involved in the justice system since he was a juvenile, including being placed at a juvenile delinquent detention facility (YDC Forestry Camp) for nearly a year.  PSR ¶ 240.  He obtained his high school diploma from juvenile placement.  PSR ¶ 302.  At the time of these offenses, the defendant was on probation with Chester County Adult Probation.  He has a history of assault convictions in state court, including some arising from domestic violence against young women with whom he was involved in romantic relationships.  The defendant's criminal convictions result in a total of 10 criminal history points, placing him in Criminal History Category V.  PSR ¶ 250.  In one of the defendant's prior simple assault cases, in January

2021, he attacked his girlfriend after she confronted him about finding what she believed to be child pornography on his cell phone.  PSR ¶ 246.[4]

In addition to these convictions, the defendant has previously been investigated for child exploitation and sextortion, but these investigations did not result in criminal charges.[5]  Chester County detectives first investigated the defendant in 2015 when he was 16 years old.  In the summer of 2015, a 15-year-old boy attending summer camp with the defendant reported to police that he came across pornography of younger girls while using the defendant's cell phone at camp.  The boy reported that he also saw evidence of the defendant threatening girls (sextorting them) on Kik Messenger.  After the initial police report, the complainant became uncooperative, and the investigation did not progress any further.  The Los Angeles County Sheriff's Office and FBI also investigated the defendant in January 2020 after a 14-year-old victim reported that a male with whom she had been communicating on Instagram began sextorting her.  In June of 2021, Pennsylvania State Police investigated the defendant after receiving a CyberTip reported by Instagram to NCMEC regarding an account associated with the defendant.

---

[4] The victim reported this to law enforcement at the time she reported the defendant's physical assault of her.  Upper Chichester Police and Pennsylvania State Police subsequently obtained search warrants for the defendant's cell phone and a MacBook laptop, but according to their reports and information obtained during this investigation and provided to the defense in discovery, the material was "age difficult" and did not include images of any previously identified minor victims.

[5] This information was provided to the defense in discovery in this matter.  The government includes law enforcement reports related to these investigations in Exhibit B, which the government will move to file under seal.  The psychological evaluations submitted by the defense also make vague reference to some of this conduct.

The government anticipates that the defense will argue for a lesser sentence, based on various factors, including their retained psychological experts' evaluations of the defendant and Dr. Thomas Haworth's opinion that the defendant poses a "moderate risk for future sexual offending."[6] Even Dr. Haworth recognizes that the defendant has several risk factors associated with recidivism, including his deviant sexual interest in coercion and non-consent, his pattern of hypersexuality and sexual compulsivity, his history of mental illness, his history of substance abuse, his past history of non-sexual criminal offenses, and his escalation of sexual offending in the level of coercion used against his child victims. *See* Dr. Haworth's Report, pp. 5-7. The government submits that the defendant should not receive additional consideration based on these evaluations. If nothing else, Dr. Haworth's opinion should alarm this Court and offer further support to the government's sentencing recommendation and the imposition of a lengthy period of at least 20 years of supervised release. The defendant has already reoffended several times, including after the intervention of the criminal justice system and searches of his electronic devices for child pornography. His crimes in this case were not the result of an isolated incident, but a pattern of conduct, culminating in his federal arrest. During his years of online sextortion, beginning at least as early as when he was 16 years old, the defendant had the opportunity to seek treatment and, in fact, participated in residential substance abuse and mental health treatment. Despite having the family support and means to seek treatment related to his ongoing sexual offending, the defendant chose not to avail himself of these resources and,

---

[6] Dr. Haworth has previously been found incredible by at least one judge in EDPA after offering a report and testimony for the defendant regarding his risk of recidivism at a sentencing hearing for transportation and possession of child pornography. *See United States v. Ryan Davis* (18-229) (Pappert, J.), ECF Nos., 97 and 99, Transcripts of sentencing hearing held on May 20, 2021.

instead, continued his escalation towards sextorting and exploiting victims as young as 9 and 10 years old.  The Guideline range in this case is based on the factors of the defendant's present crimes and extensive criminal history, and should not be decreased based on some prediction of possible future criminal behavior.  *See United States v. Borho,* 485 F.3d 904 (6th Cir. 2007) (There were no 'extraordinary circumstances' that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending); *United States v. Peterson*, 83 Fed.App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case); *United States v. Goldberg*, 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and low risk of recidivism are not valid grounds for downward departure because those factors are all taken into account in the Guidelines themselves).  The defendant's sentence should reflect the circumstances of his present crimes, and should not be based on a questionable prediction of future risk, which common sense and the defendant's own pattern of behavior suggest is great.

### 3.  The seriousness of the offense, respect for the law, and just punishment

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  § 3553(a)(2). These are serious offenses with lasting impact upon the victims.  The sentence in this case must promote respect for the laws that the defendant has broken, and must make him understand the impact of his crimes.

      4.   <u>Deterrence and consistency in sentencing</u>

Deterrence is also one of the factors that calls for a significant sentence of incarceration. The defendant himself needs to be deterred from sexually exploiting children in the future. Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual exploitation of children has serious and significant consequences. A sentence of 23 years' imprisonment to be followed by 20 years of supervised release should serve as a deterrent to the defendant and to others inclined to sexually exploit children via the Internet.

      5.   <u>Guideline Policy Statements Issued by the Sentencing Commission</u>

The sentence sought by the government comports with the policy statements and studies conducted by the United States Sentencing Commission ("USSG"). In October 2021, the USSG published a report entitled Federal Sentencing of Child Pornography Production Offenses (hereinafter "Child Pornography Production Report"). *See*

[www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf](http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf). This report is a compilation of data from 2005 through 2019 for every offender convicted in the United States of the crime of production of child pornography. Importantly, the Sentencing Commission found that in the 15-year period studied, the long-term trend shows that "[C]ourts consistently sentence child pornography production offenders to lengthy sentences." *See Child Pornography Production Report* at 21. Indeed, in analyzing the bases for the Courts' imposition of such lengthy sentences, the Sentencing Commission recognized that "child pornography production offenses are serious crimes that memorialize the sexual abuse and exploitation of children." *Id.* at 54.

The Child Pornography Production Report analyzed a number of cases over the 15-year

study period, and determined "average" sentences imposed for production offenses.[7] The data

showed that the "average" sentence increased in length for the most egregious of production

offenders.  The Commission found that courts imposed longer than average sentences when

various factors were present in a case, some of which are also present in defendant Lubinski's

case, including: the defendant's use of coercive tactics and enticements, *id.* at 48; the defendant's

misrepresentation of his identity to commit the offense, *id.*; and the defendant's pattern of sexual

exploitation of children.  *Id.* at 50.

    In short, the defendant's conduct is more egregious than the "average" online child

exploitation offender, and he has earned a 23-year sentence.

        6.    Consistency in Sentencing

    The 23-year sentence sought by the government is consistent with sentences imposed in

this District for similarly situated offenders who have committed similar crimes.  In this District,

defendants convicted of manufacturing child pornography typically receive sentences within or

close to the recommended Guideline range.  Offenders who engage in hands-on sexual abuse

often receive life-equivalent sentences.  *See, e.g., United States v. Zhinin* (17-383) (Smith, J.)

(life sentence); *United States v. Maffei* (16-511) (Goldberg, J.) (statutory maximum sentence of

---

[7] The Report found that the average sentence imposed for all production crimes was 275 months' incarceration.  *Id.* at 21-22.  Importantly, the "average" sentencing numbers are based on data that inaccurately results in "average" sentences that are actually *lower* than the true average sentence.  In calculating these averages, those defendants who received sentences of 470 months or greater (including life) were limited in the sentence average computations as just 470 months' incarceration.  *See* Child Pornography Production Report at 21, FN 35. That means that those who received sentences greater that 470 months' incarceration were capped at just 470 months (39 years), ***thus creating an inaccurate "average" sentence that is lower than the true average sentence imposed for these most egregious crimes.***

90 years' imprisonment); *United States v. Robert Caesar*, (18-525) (Pappert, J.) (statutory maximum sentence of 100 years' imprisonment imposed).

Offenders who engage in online production of child pornography typically receive lower sentences than those engaged in hands-on abuse, but these sentences are still frequently within or close to the sentencing Guideline range and well above the 15-year mandatory minimum. *See, e.g., United States v. Seibert* (17-572) (Leeson, J.) (sentence of 360 months' imposed where defendant used a fake teenage persona to entice two victims to produce sexually explicit images online; guidelines of 360-life); *United States v. Connor* (19-057) (Sanchez, J.) (sentence of 300 months' imposed where 22-year-old defendant enticed one teen victim online; guidelines called for life imprisonment); *United States v. Cunningham* (18-391) (Diamond, J.) (sentence of 240 months' imposed where defendant, a public school teacher's aide, used a fake teenage persona to entice three victim students to produce sexually explicit images online; guidelines of 235-293 months' imprisonment); *United States v. Tyler Moury*, (21-433) (McHugh, J.) (sentence of 35 years' imposed where 24-year-old defendant enticed two teen girls to produce sexually explicit images online and produced images of one victim during a sexual encounter with her; guidelines of life imprisonment); *United States v. Ryan Lacon*,[8] (23-106) (Rufe, J.) (sentence of 240 months' imposed where defendant communicated with 14-year-old victim online for months and enticed her to produce child pornography); *United States v. Jeremiah Binni*, (24-262) (Murphy, J.) (sentence of 360 months' imposed where defendant enticed one 14-year-old victim to produce sexually explicit images, including some depicting self-harm, over a 2-month period; guidelines of life imprisonment).

---

[8] Ryan Lacon submitted a character letter on behalf of the defendant. *See* Defense Sentencing Exhibit E.

Notably, unlike defendant Lubinski, most of these offenders were in Criminal History Category I, having never been arrested prior to the federal indictment in their cases.

The government submits that the defendant's crimes are worse than the "typical" online offender. The defendant victimized a greater number of children than these offenders, including 9, 10, 11, and 12-year-olds. He also repeatedly threatened his victims and demanded particularly degrading and humiliating images of them urinating on themselves and the floor, even when they begged him to stop and photographed themselves looking obviously distraught and in pain. For all these reasons, a 23-year-sentence is appropriate.

7. Other considerations

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner… ." § 3553(a)(2)(D). The defendant can and should receive vocational training, substance abuse treatment, mental health treatment, and sex offender treatment while serving his federal prison sentence.

8. Restitution and Financial Penalties

Restitution is mandatory pursuant to 18 U.S.C. § 2259. To date, the government has only received a restitution request from the parents of Minor 7 for current and future counseling costs related to the child's victimization in this case. For documentation of the expenses incurred to date, *see* Exhibit A, pp. 7-18. The parties have reached an agreement that the defendant will pay restitution to Minor 7 in the amount of $3,000. This amount includes the $420 spent out-of-pocket on counseling costs to date, as well as a reasonable estimate of projected losses to be incurred for four years of future counseling sessions with the same co-pay.

The parties also agree that the Court should order the defendant to pay an assessment of

$25,000 under the Amy, Vicky, and Andy Child Pornography Victims' Assistance Act ("AVAA").

**B.  <u>Supervised Release</u>**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be.  The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed.  Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

Here, based on the defendant's pattern of conduct, the need to adequately monitor him when he is released from his sentence of imprisonment, and continue to deter him from committing child exploitation offenses in the future, a term of at least 20 years of supervised release with the special conditions for sex offenders, as recommended by the U.S. Probation Office, is warranted.  A term of at least 20 years of supervised release in this case advances the

goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public,

§ 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts

that promote rehabilitation, including ongoing sex offender treatment, § 3553(a)(2)(D), and pays

restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the

more serious the defendant's criminal history, the greater the need for supervised release."

§ 5D1.1 app. note 2.

V.    **CONCLUSION**

For the reasons set forth above, the appropriate considerations of sentencing favor the

imposition of a sentence of 23 years' imprisonment (276 months) to be followed by a lengthy

period of at least 20 years of supervised release, with the special conditions for sex offenders as

recommended by the U.S. Probation Department.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by email and e-filing upon counsel for

defendant:

> Caroline Donato, Esq.
> CDonato@macelree.com


> */s/ Kelly Harrell*
> KELLY HARRELL
> Assistant United States Attorney


Date:  December 9, 2025